The case on our docket is Zzyym v. Pompeo, 18-1453. Thank you, Your Honor. May it please the Court, Jennifer Dickey for the Federal Defendant Appellants. At issue in this appeal is the State Department's decision to maintain its 40-year-old binary sex designation policy on U.S. passports, a policy shared by the vast majority of countries around the world. Can I stop you? Are you appealing the Judge Jackson's order after the remand? Yes. Okay. Thank you. The Department considered plaintiffs' request to allow the designation of X, but after taking into consideration a number of competing factors, including the reliance on state identity documents, the databases that its databases have to talk to, the latest medical thinking on the issue, and the anticipated cost, the Department decided to decline. With respect to the latest medical thinking, is the Department taking the position that there are no intersex children? No. No, Your Honor. The Department recognizes that intersex conditions exist. The record includes a number of medical journals discussing disorders of sexual development and intersex conditions, but it decided to adhere to its binary sex designation policy, which has been in effect for 40 years. And as the— Isn't that changing rapidly in the states and in the states in the U.S. since this case began, for example? Yes. One of the amicus briefs discusses recent changes, but as of the time that the State Department made its decision, the decision at issue here, none of those jurisdictions issued identity documents with an X designator. And at what time was that? That was in May of 2017, the decision. But that's not the pertinent time period that you're appealing, because I thought you just said a moment ago that it was the time period that existed when Judge Jackson entered the remand order, right? I believe you asked me if we were appealing the order after the remand, the decision after the remand. Right. So that's the time period that we're looking at, correct? Yes. Yes. And so the remand occurred in 2016. The decision was entered in 2017 by the State Department, and that's the decision at issue here. Let me ask you this. Since you do recognize that there are children born intersex, if a birth certificate, which seems to be common today, is left unmarked on sex or unknown, is marked on sex, so you're not dealing with an amended birth certificate, how would the person applying for a passport accurately answer your question of whether they're male or female? So under the policy as it has been implemented, and as it is listed in the Foreign Affairs Manual, the State Department would look to certification of gender correction to either male or female. But the person doesn't have any gender correction. They just want to be the way God made them. The State Department has not yet confronted that circumstance. Isn't this that circumstance? As I read the facts, at Zim's birth, the birth certificate was marked unknown. It was later amended to show male. And according to your brief, you don't consider amended birth certificates. So I'm a little confused here. My understanding is that the original birth certificate was eventually listed as male, but the male designation is treated as the original birth certificate by the state. How do you determine what the original one is and what an amended one is? Based on the state markings. So the state certifies a copy as the original birth certificate, or the state notices that it is amended. And that's one of the five reasons that the State Department gave for adhering to the binary sex designation policy, is that it has to rely upon state identity documents. But doesn't the Department accept amended birth certificates in the case of transgender people? No, not as evidence of gender change. So under the gender change policy, the State Department will accept an amended birth certificate, but it also requires a certification from a medical professional who has either treated the individual or examined the individual's medical records. And we have both of those two things in this case, an amended birth certificate and certification from two medical professionals that this person is intersex, neither male nor female. Well the gender change policy requires a certification that the individual has completed transition to male or female, and that is because... Why? Why? Well for many of the reasons... Isn't that arbitrary and capricious under the circumstances? No, Your Honor. The State Department explained that its databases do not recognize an X-identifier, and that it has to communicate with databases, both federal, state, and local, that do not recognize X-designators. Therefore, at the most basic level, applying an X-designator as requested here would cause problems with databases communicating with each other, create operational difficulties. And when is the Department going to recognize intersex people when half of the states in this country recognize it? The State Department will have to weigh the change in the states as it comes before them, but here the question is whether the State Department acted arbitrarily and capriciously in 2017 when all 57 jurisdictions upon which it relied did not include an X-identifier. So what if the plaintiff reapplied for a passport in 2020? The State Department would have to again consider the many competing factors at issue, the changes in the states, perhaps changes around the world, its databases, the ability of its databases to communicate with databases that have accepted X-designations and those that have not, and at that point would issue a new decision, a new final agency action that would be subject to judicial review at that time. We accept, as I understand it, don't we accept visitors from New Zealand, for example, who have X on their passports? Visitors from New Zealand and any other countries who have X on their passports when they apply for a visa have to select male or female. Are there any countries that we don't require a visa from? Not that I'm aware of. My understanding is any U.S. document that's issued for travel into the United States or out of the United States requires a male or female designation. And so people applying from New Zealand have to lie on their visa application or they don't get one. Same problem the plaintiff has here. We certainly understand that it may be difficult when one is confronted with a form with limited options that may not track one's best answer to a question, but that is a common occurrence and the government is entitled to have forms and individuals will have to complete those forms. Now there is no reasonable chance that a prosecutor would conclude that an individual with an X is willfully presenting a false statement to the government, that they are confronted with a form. We understand that they have to choose what fits best and that it may not be the most accurate answer that they would like to provide, but it is the answer that is available. The government is requiring them to lie. The government would not view it as a lie and certainly would not bring any criminal prosecution to the extent there is a concern. The individual could submit additional letters saying, I am intersex, I am selecting male because that is the only option. I only have options of male or female. How can you justify that in this particular case? Because I think what you're saying is, so ZIM does not need to lie, ZIM could get a passport by complying with the requirement in part of what you said because you're saying that the original birth certificate designated ZIM as male, or ZIM can use the driver's license as female. So ZIM can comply and say truthfully that I, Dana Zim, am male or I am female. Technically in this case, because the identity documents do not match, because there is a male and a female. But I'm getting to your answer to Judge Seymour that ZIM does not need to lie. Well, clearly ZIM needs to lie because you're saying that ZIM can truthfully say, I'm male or I'm female. Well... Well, under the State Department's policies, because the identity document, which is the driver's license, says female, the plaintiff would have to submit a certification to go back to using the male designation. Doesn't the driver's license now say unknown or X, Colorado license? That's correct. But that was after the decision made by the State Department in this case. And it's important to remember that this arises in a particular concrete factual scenario. But the State Department issues 20 million passports a year and is deciding this at a programmatic level. And under arbitrary and capricious review, it can act incrementally. It can say, we're going to start by expanding our gender change policy so that individuals who want a gender change do not have to undertake sexual reassignment surgery. And that is what the State Department did in 2010. It can certainly revisit this issue and can reconsider the binary sex designation policy in the future. Let me interrupt. One of the bases for arbitrary and capricious is if the agency fails to consider relevant facts. It seems to me a relevant fact here that you admit that some human beings are born who are intersex. That means it is no more appropriate to ask that person to mark male or female than it is to ask that person to mark Asian or Asian. I can't answer the question truthfully if you give me only those two options. Why isn't that arbitrary and capricious? So the Department considered the existence of persons with intersex conditions. As the amicus briefs point out, that has been known for a long time that there are individuals born with these conditions. But the practice in the vast majority of jurisdictions within the United States and around the world is binary sex designation. And to say that the vast majority of countries and the vast majority of jurisdictions in this country have acted irrationally in adhering to that policy I think is a big step. The State Department considered the relevant factors. It considered the existence of these conditions. It considered the lack of a medical consensus on what it would mean to transition to intersex, to affirmatively designate oneself, undertake physical, hormonal, or social... But they're born that way. It isn't a question of transitioning, is it? So as discussed by the advocates who asked and consulted with the State Department on the policy, it's referred to as gender correction for intersex individuals. And historically what has happened is people born with intersex conditions do undertake some corrective surgery to bring the physical, hormonal, or social expression into alignment with... Hasn't that caused lots of problems? That has. But that is the practice that has been undertaken, and it's not arbitrary and capricious for the State Department to recognize. So is it required then under the view of the State Department that a person born intersex must pick a binary sex designation and undergo surgery to be more like that? No, that's not. But the State Department simply decided that it would adhere to the binary sex designation. So if you have a birth certificate, as more and more are today because people aren't forcing parents to choose, that says unknown or doesn't enter it, and it's the original birth certificate from the state, what's the position of the State Department on what the person does to get a passport? The State Department has not addressed that circumstance yet. Under the Foreign Affairs Manual, typically there would be a gender correction and a designation. I would like... But if they don't want to get gender corrected, they think their gender is correct, which is intersex. The State Department will have to address that and weigh that at a future time, but the final agency action at issue here did not present that circumstance. And I'd like to reserve the remainder of my time for rebuttal. Thank you. Thank you. Good morning, Your Honors. May it please the Court. Paul Castillo for appellee, Dana Zim, who uses they-them pronouns, and is in the courtroom today. As this Court pointed out, at the heart of this case is Dana, who submitted truthful, accurate, and complete information to acquire a U.S. passport. The State Department asserts that Dana must select a binary-only gender designation that is inaccurate in order for them to exercise the right to travel. Thus, Dana must either be untruthful on the application form or forego any lawful means of exiting the country. The decision below by Judge Jackson should be affirmed for two reasons. First, this policy on this administrative record that was included in May of 2017 was arbitrary and capricious. And second, Congress has not authorized the Secretary to deny or withhold a passport based solely on a person's accurate gender. Before you get to those two arguments, is there a pending application for a passport? There is not, Your Honor. Is the case moot? No, it is not, Your Honor. With respect to the application, Judge Jackson had enjoined them from withholding the binary-only gender policy as a basis. But we asked for the—this application came in in 2014. When the Secretary of State had requested a stay earlier in this case, we felt that, you know, rather than going back to the State Department, that we just proceed on the merits expeditiously, which we find ourselves here today. But I think, you know, there are many indications, as we point out in our brief, of deficiencies, significant deficiencies that show that the decision-making was arbitrary and capricious. This is a case that required the State Department to consider the relevant factors, to make a genuine look at all the facts that were presented, the medical certification that was provided from doctors with the Veteran Affairs and the information with the birth certificate, and come to a reasoned decision on the matter. But they need to at least make an attempt to consider the relevant factors. One of those relevant— Well, let me start—let's go through what they're saying that they're relying on. The first is data integrity. While it is true that states are changing and jurisdictions are changing, I think it is accurate that the vast majority of jurisdictions still use binary sex designations. Would you agree with that? At this point, yes. We're getting close. Well, really not. When we count them up, it's a pretty significant majority that still use male and female. In the states, that is correct. Well, we are dealing with the State Department issuing a U.S. passport. The argument that they need to stay with the binary sex designations in order to be compatible with the majority of other jurisdictions within the country that are issuing identification documents, there's some truth to that, isn't there? I would respectfully disagree, Your Honor. And why? A couple of reasons. First of all, with respect to acquiring accurate information on a database to see whether or not there are individuals who don't qualify for a passport. They can use those same databases. They have created a system for binary transgender individuals to get a passport with an accurate gender that differs from the underlying state documents that they presented. In fact, the Gender Change Policy and the Foreign Affairs Manual is a procedure that passport officials must follow when the information, the underlying documents, differ from the gender that is requested in a passport. There's no information in the record that they couldn't use the same exact policy to scan for those individuals. Except there's going to be more false positives, right? Or, for example, you can also, say, delete out of the system weight or race. And so there will be more things that the State Department will then have to check because you have fewer sources of data. And so because the vast majority of identification documents are state-issued, and in 2017 when Judge Axson issued his amended order, or his order based after remand, at that point, there are so many states that issue, that use binary gender identification, that now if you delete that, the State Department is then going to have more things to check. And under the forgiving standard of arbitrary capricious, why isn't that a rational basis for the State Department to say that is one factor that cuts in favor of adhering to the binary gender? Well, first and foremost, this is the application of one individual, our client Dana Zim. But beyond that, Dana is entitled to a review of the application based on the facts and circumstances that were submitted with their passport application. And with respect to the databases, there's no dispute here that but for this gender designation that Dana is otherwise qualified to obtain a passport. But I think the bigger issue with respect to your question is the arbitrary and capricious nature of not considering viable solutions. The ICAO, the International Civil Aviation Organization, does have an option for individuals. It's pervasive, not mandatory. That's correct, Your Honor. But with respect to the arbitrary and capricious error here, is they didn't even consider a viable option. In State Farm, the Supreme Court told us that you must consider all the relevant factors, including a technological alternative within the ambit of the standard. The standard here includes an X marker that is an option. And dozens of countries, at least a dozen countries, offer that, including our neighbor. Yeah. But on the other hand, and again, under the rubric of an arbitrary and capricious standard, the government's argument, I think, is that the ICAO standard, so it's computer compatible, permits an X designation, doesn't require it. And there are a few countries that take advantage of that option. But the vast, vast majority of countries in 2017, when this order was issued, or when the State Department issued this decision, don't take advantage of that option to have an X designation for gender. The fact that a vast majority of the countries, or a vast majority of the states, I think takes us away from the question with respect to arbitrary and capricious. Did the agency genuinely consider the issue that was before it? And can they draw a rational connection between the facts found and the decisions made, the facts in this particular case? They never had a hearing, did they? No. There's been no evidence taken about what happens to a New Zealander with an X on their passport traveling the world. That is correct, Judge Seymour. We requested a hearing before this came to litigation. We were denied that hearing. And in addition to the fact, there's no evidence in the record that they looked at policies of other countries. There's no evidence in the record that they asked, was there any implementation problems for the countries that offer an X marker? There was no question with respect to looking to other federal agencies and asking the Department of Homeland Security with respect to foreign nationals who, although they're forced to select an inaccurate gender marker, actually enter the country, those passports are inspected by border officials, and they are let in and out and exit the country. Whereas an American citizen, according to the State Department's view, must either risk submitting inaccurate and untruthful information on a passport or otherwise forego their right to travel. This is problematic. They at least need to make a genuine, considered decision regardless of what was in the record at the time. They knew, for example, that there were court orders with a gender designation other than male or female. There were vital records of many few states that were now permitting an X marker. And Judge Jackson, even at one point, asked at the trial below, well, now that we have states, should I remand it yet again for a third time? And the department's response was, no. A person from Oregon who has an X marker on their passport would not be permitted under our current policy. Could it be arbitrary, capricious, say, for the state of Oklahoma or the state of Utah, some hypothetical state, to say we're going to adhere to the binary gender designation? Is it arbitrary, capricious? Well, the question of whether states, it would be arbitrary and capricious, is not a question that this court has to answer. We're talking about- I know, but I'm just only asking. Well, I think it would be, depending on what rationale that they use and whether they genuinely consider the problem. I would point to this court, to the state's amicus brief of the nine states on page seven where there is a citation to the American Association of Motor Vehicle Administrators from back in 2016, prior to this decision, that indicated that that standard, with respect to what was there in the record in 2016, indicated the option for an X gender marker. For amendments, right? For example, there was reference to California, but those states allow an amendment, say, of a birth certificate or a driver's license, but there's no states, at least in 2017 at the pertinent time, that allowed an original identification marker of X, right? In 2017, there were a few with respect to birth certificates. Original birth certificate. Oregon. There was an amended birth certificate. You're right. You're correct, Your Honor. Isn't there a rational basis for saying everybody has a different standard for what it takes to amend a driver's license or a birth certificate, and we as the State Department have a right to set our own rules for when that can happen? Well, I think it's interesting that they have that rationale because everybody has a different standard with respect to a name change, and courts have varying standards as to how they process a name change. But they accept a court order with respect to name changes, a core aspect of identity, but they don't do so for gender marks. Assuming that's true, Your Honor, the question before this court is, they concede in the Foreign Affairs Manual that they lack any sort of medical expertise on this issue. They've deferred consistently to the standards of care. What they seem to argue is there's no medical consensus on what defines a third sex. Am I understanding that wrong, or is that the argument? I believe that's their argument. How do you respond to that? Well, I think State Farm gives us an indication that the first step that an agency must do is they must display an awareness that they are changing position. When you have in the Foreign Affairs Manual a statement from the State Department, the agency that we have, we lack medical expertise in the area. We are adopting a standard for gender change that has been supported by the American Medical Association, and the standards of care themselves indicate that it's the best medical consensus  transitioning individuals. You can argue that the State Department considered and decided that for transitioning individuals, there is now a medical consensus that someone can transition to another gender and that there are enough identifiable characteristics that one can make a determination whether someone is then male or female. Then what the State Department is arguing is that they have made a determination that WPATH, it's a private non-profit organization, it hasn't mandated it, it simply says that an ex-designation may be advisable, and they've said, well, we don't think it is advisable in this context because there are too many differentiating opinions about the medical profession, whether it's gender perception, whether it's particular genitalia, and so they have said that those are different circumstances. What's your response? I see my time is up, if I may. Well, that's okay. Well, you know, they would need to, you know, they can change their view. There's no question under arbitrary capricious. They can make that change in their view. I think we would have some constitutional questions, but they are able to change their view. The problem here is before changing the view, they need to say, we're going to take a step back from what we've said before. Something to demonstrate that they're not ignoring their policy or practice. That is what's arbitrary capricious here. We ask this court if there are no further questions that you affirm the decision below. Thank you. Just two quick points. First, this is not a change of position. This is an adherence to a position that the State Department has had since the 1970s requiring male and female designations on U.S. passports. No evidentiary hearing was needed on other countries' experiences because this is a core diplomatic communication. The State Department is the agency with expertise on all of the issues surrounding this gold standard identity document. Yes, but why isn't it necessary to take evidence when things are changing so rapidly? Medical opinion, states are changing their policy, countries are changing their policy. Isn't it important to have some sense of what's going on in the world different from what the State Department has based its conclusions on previously? Yes, the State Department is aware of the changes, certainly in other countries, but again, only in a handful of countries. And it considered that change in the handful of countries, but it brought its expertise to bear on the issues of this identity document both at home and abroad. Does it make a difference that a number, quite a few states have changed their positions since 1917, I mean 2017? Not for the purposes of this court's review, which is from a final agency action in 2017. Should we remand to you for further consideration? That wouldn't be... Are you up to date? That would not be the appropriate procedural... I'm sorry, my time's expired. That wouldn't be the appropriate procedural point at this time. The APA provides for review from final agency actions, and you can imagine if this were a rulemaking, you would assess the rulemaking on its own rather than remand because that does have implications for what policy is in place. So in the ordinary course, the appropriate thing to do would be to assess the agency action as of 2017. And if the State Department is presented with a new passport application, it will consider factors at that time. Let me indulge. Would you admit that from 1970 when the binary gender designation was added to the passport obligation to today that there have been huge advances in the medical understanding of gender and intersex? There have certainly been a lot of changes. That's one of the reasons why the State Department updated its gender change policy in 2010. Would that be a good reason to have a hearing to find out if the binary designation still works with the facts as we understand them? The State Department could always choose to do so, but it's not required to do so under the Administrative Procedure Act. Is it arbitrary and capricious not to do so? No, absolutely not. This is an informal adjudication, plainly within the agency's authority under the APA. And so we would ask this Court to reverse because it was not arbitrary and capricious, and that also disposes of the statutory authority holding of the district court. There are no further questions. Thank you. I think that this matter will be submitted. Thank you both.